Cavanagh, J.
I respectfully disagree with the majority’s conclusion that plaintiff Robert C. Anderson’s collision with a timing shack is a danger that inheres in the sport and recovery is precluded under Michigan’s Ski Area Safety Act, MCL 408.321 et seq. I believe a question of fact remains whether the danger *30 of plaintiffs collision with the timing shack was obvious and necessary, thus making summary disposition inappropriate. Because I would affirm the decisions of the Court of Appeals and the trial court denying defendant summary disposition, I must dissent.
I. STANDARD OF REVIEW
We review de novo decisions on motions for summary disposition. Spiek v Dep’t of Transportation, 456 Mich 331, 337; 572 NW2d 201 (1998). Likewise, we review de novo matters of statutory interpretation. Cardinal Mooney High School v Michigan High School Athletic Ass’n, 437 Mich 75, 80; 467 NW2d 21 (1991).
II. ANALYSIS
A. SIÜ AREA SAFETY ACT
This case concerns Michigan’s Ski Area Safety Act (sasa), MCL 408.321 et seq., particularly MCL 408.342(2), which provides:
Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.
The majority properly characterizes the two types of dangers inherent in the sport, as provided by the statute, as natural hazards and unnatural hazards. *31 MCL 408.342(2) gives as examples the following unnatural hazards: “collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.” However, such hazards must be “obvious and necessary” before a ski operator may be protected by the statute.
In this case, we must determine whether the timing equipment, including the shack in which the equipment was housed, is a danger inherent in the sport, and whether the danger is obvious and necessary. As the statute expressly states, it is the danger that must inhere in the sport. Timing the race itself is not the danger to be considered; the timing equipment is the danger; thus, the equipment must be the inherent danger before we can continue the inquiry posed by the statute.
It is not disputed that timing and equipment are necessary in ski racing. Nor is it disputed that timing equipment must be protected from the elements. However, it does not follow that a timing shack is necessary, or that the placement of the timing shack in this case, near the finish line of the racecourse at the bottom of the hill, was “obvious and necessary,” as required by MCL 408.342(2). Therefore, I disagree with the majority that the placement of the timing shack is a danger skiers are held to accept as a matter of law.
Further, the unnatural hazards in the statute are not described as particular items, but collisions with the particular items. (E.g., “collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment”). Therefore, we must *32 focus on the collision with the timing shack, not just the timing shack itself. “Location, location, location!” Contrary to the majority’s analysis, location must be a factor because it relates to whether the danger of collision is necessary.
MCL 408.342(2) does not simply read that dangers that inhere in the sport are ones for which skiers assume the risk. The dangers must also be obvious and necessary. If the timing equipment can be located in a way that poses no danger of collision, such as at the top of the hill as it is now, then the danger posed by the timing shack is not “necessary” as required by MCL 408.342(2).
The inquiry is whether plaintiff assumed the risk and accepted the danger of colliding with this particular timing shack. We must examine the necessity of the shack itself, as well as the necessity of the location.
The majority accuses me of misconstruing the sasa and creating a strict-liability test for ski-area operators. Quite the contrary, it is the majority that overzealously misconstrues the sasa in favor of ski-area operators by skimming over the “obvious and necessary” requirement imposed by the Legislature. I cannot agree with the majority that simply because timing equipment is necessary, as is protection for such equipment, that plaintiff’s collision with the timing shack was “necessary.” That the timing shack is a hazard that inheres in the sport and is of the same type as ski towers and snow-making machines does not mandate the conclusion that plaintiff accepted the risk of colliding with the timing shack as a matter of law.
*33 I respectfully disagree with the majority’s recharacterization of the question I pose in this case, ante at 27. I would ask, as the statute requires, whether the collision with the timing shack was necessary. Because there was testimony from which a jury could find that plaintiff’s collision with the timing shack was not necessary, summary disposition is inappropriate.
Ultimately, in its response to my dissent, the majority misses the point with its discussion of foreseeability.[1] My focus is on the language of MCL 408.342(2). Because the statute requires the danger to be inherent as well as obvious and necessary, and because there remains a question of fact with respect to the necessity of this timing shack and its location, summary disposition for defendant is inappropriate at this time. The trial court properly denied defendant’s motion, and this Court should not disturb that ruling.
B. MOTION FOR SUMMARY DISPOSITION
In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties. MCR 2.116(G)(5). Quinto v Cross & Peters Co, 451 Mich 358, 362; 547 NW2d 314 (1996). Such evidence is viewed in a light most favorable to the party opposing the motion—in this case, plaintiffs. Id. A trial court may grant a motion for sum *34 mary disposition only when the affidavits or other documentary evidence show that there is no genuine issue regarding any material fact. Id.
In this case, there remains a genuine issue of material fact—whether the location of the timing shack, or even the timing shack itself, was necessary. I would not decide this issue as a matter of law as the majority does; rather, I would put it in the hands of the trier of fact.
There is deposition testimony in this case that it was unnecessary to place the timing shack at the bottom of the hill near the finish line. In fact, there is testimony that a shack was not necessary to house the timing equipment.
Robert Shick, Pine Knob’s general manager, admitted it was unnecessary to place the timing shack so close to the finish line for ski races. He testified that he had seen racecourses at several other ski resorts and had seen the timing shack placed at the top of the ski hill. Mr. Shick further admitted that a timing shack could be placed anywhere, it does not have to be near the finish line. Additionally, Mr. Shick testified that “reflecting upon this accident,” Pine Knob reshaped the racing area and moved the timing shack further away from the finish line.
Further, three coaches who were present on the day of the accident testified that the timing shack could have been anywhere. Daniel Costigan, a ski coach for Detroit Country Day, testified that during the season after plaintiff’s injury, the timing shack was on the top of the hill, off the skiing surface. Coach Costigan also testified that there was no need for a timing shack at the bottom of the hill. Coach Joseph Kosik testified at his deposition that there was *35 flexibility in regard to the location of the timing shack. Finally, Coach Earl Rosengren testified at his deposition that the timing shack was moved after plaintiffs accident, even though it houses the same timing equipment it did at the time of the accident. Coach Rosengren also stated that there does not need to be an actual shack in which to house timing equipment.
The testimony of these four individuals clearly presents a genuine issue of material fact—whether the timing shack at the bottom of the hill, or even the shack itself, was necessary, as required by MCL 408.342(2) before declaring that plaintiff assumed this danger. Thus, summary disposition is inappropriate.
III. conclusion
I would hold that plaintiff is not precluded from recovery as a matter of law. Rather, a genuine issue of material fact remains whether the danger of plaintiffs collision with the timing shack was obvious and necessary. Because there is evidence that the location of the timing shack, and even the shack itself, was not necessary, plaintiff should not be precluded from recovery under the sasa. I would affirm the decisions of the Court of Appeals and the trial court.
Kelly, J., concurred with Cavanagh, J.

 With regard to the majority’s recitation of Palsgraf v Long Island R Co, 248 NY 339; 162 NE 99 (1928), I assure my colleagues that I am familiar with Palsgraf and do not wish to engage in any type of hindsight analysis. Instead of debating the doctrines of tort law, I simply attempt to apply the statute at issue.